**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JANICE ALLEN-BROOKS,<br><br>    Plaintiff,<br><br>       v.<br><br>THE PARK SCHOOL and SCOTT YOUNG, individually and as Head of School,<br><br>    Defendants. | Civil Action No. 1:26-cv-12757-RGS |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants the Park School and Scott Young respectfully submit this memorandum in support of their Partial Motion to Dismiss Plaintiff Janice Allen-Brooks's Complaint.[1] For the reasons discussed in detail below, Defendants respectfully request that this Court issue an order dismissing with prejudice Counts III, VI, VII, and VIII of Allen-Brooks's Complaint in their entirety and dismissing Counts I-VI as to Young in his individual capacity.

---

[1] Cases in this jurisdiction support the view that a partial motion to dismiss stays the requirement to answer the remaining counts. *See Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. 12-cv-11874-DJC, 2013 WL 3335022, at *6 (D. Mass. July 1, 2013)); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001) (a partial motion to dismiss suspends the time to answer the claims not subject to the motion). Should the Court disagree, Defendants respectfully move to extend the deadline for filing an answer on Counts I, IV, and IX as to the Park School until after the Court rules on this Partial Motion to Dismiss.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.   **The Complaint.**[2]

Allen-Brooks was employed as a music teacher at the Park School, beginning in 1989. Dkt. No. 1-1 ¶ 7. She alleges that she suffers from two disabilities: legal blindness due to glaucoma, which substantially limits her ability to see, and a compromised immune system resulting from immunosuppressive medications following kidney transplant surgery. *Id.* ¶¶ 10–12. She alleges that despite these disabilities, she was able to perform the essential functions of her position as a music teacher with reasonable accommodations. *Id.* ¶ 13.

Allen-Brooks taught remotely during the 2020-2021 and 2021-2022 school years due first to the COVID-19 pandemic and then to health concerns related to her kidney transplant. *Id.* ¶ 20. On March 4, 2022, the Park School offered Allen-Brooks a contract to return to full-time in-person teaching beginning in September 2022, which she accepted. *Id.* ¶¶ 22–23.

At the beginning of June 2022, Allen Brooks alleges that she met with Young, Allen-Brooks' husband, and the Park School's human resources representative to discuss accommodations for her return to in-person teaching. *Id.* ¶ 25. She alleges that, at this meeting, the parties discussed and agreed upon the following accommodations: a plan to support Allen-

---

[2] Defendants dispute many of Allen-Brooks's allegations. Defendants contend that the evidence in this case will demonstrate that the Park School engaged in a thorough, good-faith, interactive accommodation process with Allen-Brooks throughout the 2022-2023 school year; provided each accommodation she requested, and several she did not; created and funded two new teaching assistant positions—at a combined cost of over $100,000—specifically to support her return to in-person teaching; and continued to pay Allen-Brooks her full salary and health insurance benefits through the end of her contract, following the conclusion of her employment. The record will further demonstrate that Allen-Brooks, on October 24, 2022, asked whether the retirement package "was still on the table," left the school that day, emailed colleagues announcing that she "decided to take an early retirement effective immediately," and personally approved the school's proposed announcement of her retirement to the community. Nonetheless, Defendants recite here all allegations as pleaded in the Complaint for the limited purpose of this Partial Motion to Dismiss.

Brooks's monthly infusion treatments on Tuesdays; a requirement that students wear masks in her classroom; the placement two HEPA air filters in her classroom; a qualified teaching assistant to assist Allen-Brooks; IT training before the school year began; and removal of all fall hazards in and around her classroom. *Id.* ¶ 27. She further alleges that Young offered her an early retirement package toward the end of this meeting, which she declined, and that he continued to press early retirement on her repeatedly thereafter, despite her having already signed her contract for the 2022-2023 school year. *Id.* ¶¶ 29–32.

Allen-Brooks alleges that none of the agreed-upon accommodations were properly implemented when she returned to work in September 2022. *Id.* ¶ 33. Specifically, she alleges that: no assistant had been hired when she arrived; the Park School's scheduler scheduled her chorus class at the time of her monthly infusion appointment, forcing her to change her medical schedule; the Head of the Lower Division gave students permission not to wear masks in her classroom; only one HEPA filter was placed in her classroom rather than two; and IT training was not provided to her before the start of school. *Id.* ¶¶ 37–44. She also alleges that handicapped parking spaces previously located in front of the school were removed, that the theater stage was inaccessible to her due to steep stairs with no railings, and that no fire drill evacuation plan adapted to her visual disability was provided. *Id.* ¶¶ 47–55.

In the fall of 2022, the Park School hired an individual "I.O." as Allen-Brooks's teaching assistant.[3] *Id.* ¶ 60. Allen-Brooks alleges that I.O. disclosed to her that he had been diagnosed with severe depression and severe anxiety, suffered from chronic urinary tract infections that caused him to leave the classroom periodically, experienced unpredictable anxiety attacks and

---

[3] The Park School refers to the teaching assistant by his initials, I.O., rather than his full name, out of respect for his privacy interests.

3

mood swings during class, and had difficulty wearing a mask. *Id.* ¶¶ 62–65. She further alleges that, on one occasion, I.O. passed out on the floor near her first-grade students while in the theater. *Id.* ¶ 68. She claims that she repeatedly reported her concerns to Young and other administrators, that they were dismissed or ignored, and that when a meeting was convened to address the situation, administrators reframed it as a personality conflict between Allen-Brooks and I.O. *Id.* ¶¶ 75–81.

Allen-Brooks alleges that her final meeting with Young took place on October 24, 2022. *Id.* ¶ 83. According to the Complaint, she reiterated her concerns about I.O. and asked that he be reassigned to a different position; Young refused; and Young again offered to send her a retirement package. *Id.* ¶¶ 84–87.

Allen-Brooks claims that she had previously been approved to take personal leave on October 25, 2022. *Id.* ¶ 88. On that date, she allegedly discovered that she had been locked out of all Park School communications systems and that her key fob had been deactivated. *Id.* ¶¶ 89–90. She alleges that Young subsequently informed her that she had "voluntarily resigned" at the October 24 meeting, although she never signed any resignation, retirement, or separation agreement. *Id.* ¶¶ 91–92.

**B.       The EEOC and MCAD Proceedings.**

On March 9, 2023, Allen-Brooks filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Massachusetts Commission Against Discrimination (MCAD). The case was originally pending before the EEOC, and Allen-Brooks filed an Amended Charge on April 14, 2023. *See* Exhibit A. The Amended Charge brings claims of (1) failure to make reasonable accommodations under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (ADA) and under Mass. Gen. Laws ch. 151B; (2) wrongful termination; (3) breach of contract; and (4) violations of the Occupational Safety and Health Act

of 1970 (OSHA). *Id.* The Amended Charge does not raise any claims of retaliation under the ADA or ch. 151B, nor does it raise any individual claims against Young. *Id.*

On May 31, 2023, the Park School responded to the Amended Charge. Thereafter, in December 2023, the case was transferred to the MCAD. Although Allen-Brooks's Complaint alleges that the MCAD "issued its determination" regarding the Charge, that is false: the MCAD has never issued a determination in this matter. To the contrary, the matter remains at the MCAD, and Allen-Brooks has never filed a Notice of Removal removing the matter to Superior Court.

On October 20, 2025, Allen-Brooks filed a civil action in the Norfolk Superior Court, asserting discrimination on the basis of disability, failure to provide reasonable accommodations, and retaliation, all in violation of Mass. Gen. Laws ch. 151B (Count I-III); the same three claims in violation of the ADA (Counts IV-VI); wrongful termination in violation of public policy (Count VII); intentional infliction of emotional distress (Count VIII); and breach of contract (Count IX). Allen-Brooks made no attempt at service between October 2025 and April 2026. Nearly three months after the deadline for serving the Complaint, on April 22, 2026, Allen-Brooks moved for an extension of time to serve the Complaint, which the Superior Court allowed over Defendants' opposition. Defendants were served with the summons and complaint on May 18, 2026, and removed the matter to this Court on June 17, 2026.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss, the court may consider, in addition to the complaint, exhibits and other matters fairly incorporated within it and matters susceptible to judicial notice, without converting the motion to dismiss into a motion for summary judgment. *See Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014). "MCAD and

EEOC documents are official public records subject to judicial notice," which may be considered for purposes of a motion to dismiss. *Gamst v. Bos. Univ.*, No. 23-cv-12452-FDS, 2024 WL 758173, at *1 n.1 (D. Mass. Feb. 23, 2024); *see also Rodriguez v. Putnam Invs.*, No. 06-cv-10819-MLW, 2007 WL 9798216, at *2 (D. Mass. Sept. 15, 2007) (taking judicial notice of MCAD and EEOC records on a motion to dismiss).

**ARGUMENT**

**A.    Allen-Brooks's retaliation claims (Counts III and VI) must be dismissed for failure to exhaust administrative remedies and for failure to state a claim.**

1.    *Allen-Brooks's retaliation claims must be dismissed because she failed to exhaust her administrative remedies.*

Allen-Brooks's Complaint asserts claims of retaliation under Mass. Gen. Laws ch. 151B (Count III) and the ADA (Count VI). Both claims must be dismissed because Allen-Brooks did not file these retaliation claims before the EEOC or the MCAD.

Both the ADA and ch. 151B require an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination. *See* 42 U.S.C. § 12117(a); Mass. Gen. Laws ch. 151B, §§ 5-9; *see also Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 531 n.11 (2001) ("A claim cannot be brought alleging discrimination under Mass. Gen. Laws ch. 151B, unless it is preceded by the filing of a complaint of unlawful discrimination with the MCAD"). The purpose of this exhaustion requirement is twofold: "(1) to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination; and (2) to provide notice to the defendant of potential liability." *Kern v. Income Rsch. & Mgmt.*, No. 15-cv-14114-LTS, 2017 WL 631188, at *3 (D. Mass. Feb. 15, 2017) (quoting *Everett v. 357 Corp.*, 453 Mass. 585, 600 (2009)); *see also Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). "These purposes 'would be frustrated if the claimant were permitted to allege one

6

thing in the MCAD complaint only to allege something entirely different in the ensuing civil action.'" *Id.* (quoting *Everett*, 453 Mass. at 600).

Allen-Brooks's Amended Charge alleged only (1) failure to make reasonable accommodations, (2) wrongful termination, (3) breach of contract, and (4) OSHA violations. *See* Exhibit A. It did not raise any claim of retaliation under ch. 151B or the ADA. *Id.* Indeed, the word "retaliation" does not appear in the Amended Charge at all. Accordingly, the MCAD has not been investigating any claim of retaliation, nor have the parties to this case had any opportunity to assert their claims and defenses related to retaliation at the MCAD or EEOC.[4] Having failed to present a retaliation claim in the operative Amended Charge at the MCAD or the EEOC, Allen-Brooks has not exhausted administrative remedies on Counts III or VI, and they must therefore be dismissed.

2. *The Complaint does not plausibly allege a causal connection between any protected activity and any adverse employment action.*

Even had Allen-Brooks administratively exhausted her retaliation claims—which she did not—Counts III and VI must independently be dismissed because the Complaint fails to plausibly allege the essential element of causation: a nexus between protected activity and an adverse employment action.

To state a claim of retaliation under ch. 151B or the ADA, a plaintiff must allege (1) that she engaged in conduct protected by the statute; (2) that she was subjected to an adverse employment action; and (3) that there was a causal connection between the protected conduct and the adverse action. *See Mole v. University of Mass.*, 442 Mass. 582, 591–592 (2004) (ch.

---

[4] Undersigned counsel has not identified a case on point regarding amendments to MCAD charges. However, following amendment, an earlier court complaint "is a dead letter and 'no longer performs any function in the case.'" *See InterGen N.V. v. Grina,* 344 F.3d 134, 145 (1st Cir. 2003) (citations omitted).

151B); *Kelley v. Correctional Med. Servs., Inc.*, 707 F.3d 108, 115 (1st Cir. 2013) (ADA). As with any claim under Rule 12(b)(6), bare legal conclusions—such as allegations that "[t]here was a causal connection between Plaintiff's protected activity and the adverse employment actions," Dkt. No. 1-1 ¶ 118—do not suffice. *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) then *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95–96 (1st Cir. 2007)) ("a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief'").

Allen-Brooks identifies her alleged protected activity as requesting reasonable accommodations at the June 2022 meeting and complaining about "discriminatory treatment and unsafe working conditions" or "opposing discriminatory practices" thereafter. Dkt. No. 1-1 ¶¶ 116, 136. She pleads specific complaints about (1) an inaccessible theater stage, *id.* ¶¶ 50–52, and (2) lack of a fire drill evacuation plan, *id.* ¶ 55. Both complaints were allegedly made during the first week of school, approximately six weeks before Allen-Brooks's separation on October 25, 2022. *Id.* ¶¶ 52, 55.

As to her ch. 151B claim, Allen-Brooks identifies seven categories of alleged retaliatory conduct, which fall into two groups with distinct deficiencies. *Id.* ¶ 117. Four of the seven acts Allen-Brooks identifies—dismissive treatment by Young and other administrators; continued assignment of I.O. despite her objections; failure to send observers to her classroom as promised; and repeated pressure to accept retirement packages—do not constitute adverse employment actions and therefore cannot support a retaliation claim. An adverse employment action requires a showing that the employer's conduct "materially disadvantaged" the plaintiff in the objective aspects of her employment. *Yee v. Massachusetts State Police*, 481 Mass. 290, 296–297 (2019),

8

quoting *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707–708 (2011). Dismissive treatment, continuation of an existing assignment, managerial inaction, and unsolicited retirement offers do not materially change the terms or conditions of employment. *See, e.g.*, *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662–663 (1996) ("[s]ubjective feelings of disappointment and disillusionment" do not constitute adverse employment actions). Moreover, Allen-Brooks's complaints about I.O. cannot support a retaliation claim for the independent reason that the ADA and ch. 151B do not require an employer to terminate or reassign one employee in order to accommodate another. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002) (holding that the ADA does not require that employers take actions that conflict with the interests of other employees).

The remaining alleged actions—deactivation of Allen-Brooks's building access, characterization of her departure as a voluntary resignation, and termination—do constitute adverse employment actions, but Allen-Brooks alleges no facts connecting her alleged protected activity to those actions. Her request for accommodations occurred in June 2022, and her complaints about the stage and fire drill plans took place during the first week of school, several weeks before her alleged termination in October 2022. A temporal gap of weeks or months, standing alone, is not sufficient to support an inference of causation. *Mole*, 442 Mass. at 592 ("[t]hat an employer knows of a discrimination claim and thereafter takes some adverse action against the complaining employee does not, by itself, establish causation"). And the Complaint alleges no facts suggesting that the Park School's decision to terminate Allen-Brooks was motivated by her request for accommodations or her complaints. Counts III and VI therefore independently fail to state a claim.

9

**B.      Allen-Brooks's wrongful termination claim (Count VII) fails because ch. 151B and the ADA provide the exclusive statutory remedy for the conduct alleged.**

      1.     *The public policy exception does not apply where a comprehensive statutory scheme exists.*

Count VII alleges wrongful termination in violation of public policy. Dkt. No. 1-1 ¶¶ 140–144. Allen-Brooks asserts that her termination violated "clearly established public policy protecting disabled employees from discrimination and guaranteeing their right to reasonable accommodations," and she expressly invokes both ch. 151B and the ADA as the source of that public policy. *Id.* ¶ 143. Precisely because those statutes are the source of the public policy she identifies, Count VII cannot proceed as an independent common-law tort.

Massachusetts courts recognize a narrow common-law exception to at-will employment for employees discharged "for asserting a legally guaranteed right . . . , for doing what the law requires . . . , or for refusing to do what the law forbids." *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149–150 (1989). But this exception exists only to fill gaps, to protect employees where, "unless a remedy is recognized, there is no other way to vindicate such public policy." *Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 512, *aff'd*, 397 Mass. 1004 (1986). By contrast, where a comprehensive statutory scheme provides a remedy for the violation of a particular public policy, that remedy is exclusive. *See Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 586 (1994).

That principle is dispositive here. Allen-Brooks identified the public policy she seeks to vindicate as that "protecting disabled employees from discrimination and guaranteeing their right to reasonable accommodations" as "expressed in . . . ch. 151B and federal law as expressed in the ADA." Dkt. No. 1-1 ¶¶ 141, 143. That is not a gap in the law; it is the law itself. "Courts consider Chapter 151B a comprehensive remedial statute, and therefore generally preclude plaintiffs from bringing common law wrongful termination claims premised on discriminatory

employment practices barred by Chapter 151B." *Welch v. People's United Bank, Nat'l Ass'n*, No. 20-cv-11390-ADB, 2021 WL 1391467, at *5 (D. Mass. Apr. 13, 2021) (dismissing wrongful termination claim where plaintiff's "public policy wrongful termination cause of action simply recasts his Chapter 151B claim"); *see also Hoffman v. Newton-Wellesley Hosp.*, No. 26-cv-10220-DJC, 2026 WL 1724395, at *4 (D. Mass. June 15, 2026) (dismissing ADA claim on the same basis). Allen-Brooks's public policy tort claim therefore fails as a matter of law.

2.      *The wrongful termination claim cannot be maintained against Young individually.*

Count VII must also be dismissed against Young for the independent reason that the public policy exception imposes liability only on employers*,* not on individual supervisors or employees. The exception "prohibit[s] *employers* from firing at-will employees 'for reasons that violate public policy.'" *Kelley v. Lawrence Pub. Sch.*, 2018 WL 6833508, at 2 (D. Mass. Dec. 27, 2018) (quoting *Flesner v. Technical Commc'ns Corp.*, 410 Mass. 805, 810 (1991)) (emphasis added). Individual defendants who are not an employee's employer cannot be liable under this doctrine. *See, e.g.*, *United States ex rel. Karvelas v. Tufts Shared Servs., Inc.*, 433 F. Supp. 3d 174, 182–83 (D. Mass. 2019) (granting motion to dismiss wrongful termination public policy claim against individual defendants because "Defendants Lussier and Hudson-Jinks were not Karvelas' employer").

Young is alleged to be an individual who served as Head of School at the Park School, Dkt. No. 1-1 ¶ 3; he is not alleged to be (and is not in fact) Allen-Brooks's employer. Young therefore cannot be subject to personal liability for wrongful termination in violation of public policy, and Count VII must be dismissed against him for this additional reason.

**C.    Allen-Brooks's intentional infliction of emotional distress claim (Count VIII) is barred and fails to state a claim.**

1.    *The exclusivity provision of Workers' Compensation Act bars Allen-Brooks's claim.*

Count VIII alleges intentional infliction of emotional distress (IIED) based on the same course of conduct underlying Allen-Brooks's discrimination claims. Dkt. No. 1-1 ¶¶ 145–150. This claim is barred by the exclusivity provision of the Massachusetts Workers' Compensation Act (WCA), Mass. Gen. Laws ch. 152, § 24.

The WCA provides, in relevant part, that "[a]n employee shall be held to have waived his right of action at common law . . . in respect to an injury that is compensable under this chapter, to recover damages for personal injuries." Mass. Gen. Laws ch. 152, § 24. This provision bars employees from maintaining common-law tort claims against their employer for injuries that arise out of and in the course of their employment, and Massachusetts courts consistently apply the WCA bar to IIED claims grounded in workplace conduct. *See Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996) (applying WCA bar to IIED claims arising out of sexual harassment); *see also Brown v. Nutter, McClennen & Fish*, 45 Mass. App. Ct. 212, 214 (1998); *Hart v. Verizon Commc'ns, Inc.*, No. 02-cv-11483-RWZ, 2002 WL 31027429, at 1 (D. Mass. Sept. 11, 2002), *aff'd*, 128 F. App'x 160 (1st Cir. 2005).

Here, Allen-Brooks's IIED claim is based entirely on alleged conduct that occurred in the course of her employment at the Park School: the school's alleged failure to provide accommodations, the assignment of I.O. to her classroom, Young's alleged responses to her complaints, the alleged pressure to retire, and the manner of her alleged termination. Dkt. No. 1-1 ¶ 146. These are the same facts that form the basis of her disability discrimination claims, and the emotional distress for which she seeks compensation—"anxiety, depression, humiliation, loss of self-esteem, and sleep disturbances," Dkt. No. 1-1 ¶ 150—is alleged to flow directly from her

12

employment relationship with the Park School. The WCA's exclusivity provision accordingly bars Allen-Brooks from repackaging her workplace injury as a common law tort.

    2.    *The IIED claim also fails to state a claim.*

Moreover, Allen-Brooks fails to state a claim for IIED. The standard for IIED is exacting: a plaintiff must demonstrate that the defendant's conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976). These requirements are "aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Id.* (quoting *Womack v. Eldridge*, 215 Va. 338, 342 (1974)). "Thus, liability cannot be predicated upon 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, comment d).

Even accepting Allen-Brooks's allegations as true, the conduct she describes—failure to implement promised accommodations, assigning an assistant she found inadequate, being dismissive of her concerns, pressuring her toward early retirement, and ultimately characterizing her departure as a voluntary resignation—falls well short of the extreme and outrageous threshold. Difficult, even unfair, employment circumstances do not constitute IIED. *See Kelleher v. Lowell Gen. Hosp.*, 98 Mass. App. Ct. 49, 56 (2020) (affirming dismissal of IIED claim despite allegations of supervisor abuse and intolerable working conditions). Because Allen-Brooks has not plausibly alleged conduct that rises to that extraordinary standard, Count VIII must be dismissed regardless of the WCA bar.

**D.     Counts I-VI against Young, in his individual capacity, must be dismissed.**

1.      *Counts I-III must be dismissed against Young for failure to exhaust administrative remedies.*

Counts I-III assert ch. 151B claims against "all Defendants," including Young individually. Those claims should be dismissed as to Young because Allen-Brooks failed to exhaust administrative remedies as to him.

As discussed above, "the predicate of administrative filing is mandatory to filing a civil suit. It may not be waived." *Everett*, 453 Mass. at 600 (2009). This serves to give the MCAD an opportunity to investigate and provides notice to the defendant of potential liability. *Id.* Those purposes are not satisfied where a plaintiff later sues a party who was never named as a respondent in the MCAD charge.

In *Butner v. Department of State Police*, the Massachusetts Appeals Court held that claims against a doctor and medical provider were barred where the plaintiff did not name them as respondents before the MCAD, even though she described their conduct in the charge. 60 Mass. App. Ct. 461, 466–68 (2004). The court explained that, because those individuals were not named in the charge, they received no notice that they faced potential personal liability and no opportunity to participate in conciliation, and the statutory purposes underlying the administrative filing requirement would not be served by allowing the later suit. *Id.* at 468. Similarly, in *King v. Tim First*, the Massachusetts Appeals Court held that a landlord's failure to name a property manager and real estate company as respondents in her MCAD complaint barred her later ch. 151B claims against them. 46 Mass. App. Ct. 372, 374–75 (1999).

Here, the Amended Charge names only "The Park School" as a Respondent. *See* Exhibit A. It lists Young among "the…people [who] were involved" in certain of the alleged events, but it does not identify him as a Respondent, does not seek relief from him, and did not result in him

14

being served or appearing as a party before the MCAD. *Id.* Allen-Brooks's failure to name Young as a Respondent means he has never been on notice of potential personal exposure and has had no opportunity to participate in the MCAD process to defend any claims against him. Allowing ch. 151B claims against him now would circumvent the administrative scheme, *see Butner*, 60 Mass. App. Ct. at 466–68; *King*, 46 Mass. App. Ct. at 374–75, and Counts I-III should therefore be dismissed as to him for lack of administrative exhaustion.

2.      *Counts IV-VI must be dismissed against Young because there is no individual liability under the ADA.*

Counts IV-VI assert ADA claims against "all Defendants," including Young. Title I of the ADA, however, imposes liability on "covered entit[ies]"—employers, employment agencies, labor organizations, and joint labor-management committees—not on individual supervisors or co-workers. 42 U.S.C. §§ 12111(2), 12112(a). Indeed, the First Circuit has squarely held that there is no individual liability under Title I of the ADA. *Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011)

Because Young is alleged to be an individual who served as Head of School, not Allen-Brooks's "employer" within the meaning of Title I, Dkt. No. 1-1 ¶ 3, Counts IV–VI must be dismissed as to him.

**CONCLUSION**

For all the foregoing reasons, the Park School's Partial Motion to Dismiss should be granted, and this Court should issue an order dismissing with prejudice Counts III, VI, VII, and VIII of Allen-Brooks's Complaint in their entirety and dismissing Counts I-VI as to Young in his individual capacity.

Respectfully submitted,

*/s/ Alexandra Arnold*
Alexandra Arnold (BBO #706208)
aarnold@clohertysteinberg.com
Victoria L. Steinberg (BBO #666482)
vsteinberg@clohertysteinberg.com
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
617-481-0160

Dated: June 24, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document was served electronically upon all counsel of record filing through the ECF system on June 24, 2026.

*/s/ Alexandra Arnold*
Alexandra Arnold

16