<u>**Janice Allen-Brooks**</u>

<u>**Charge # 846202311936**</u>

This matter arises from my employment at The Park School ("the School"), as a teacher in the Music Department. I seek relief and damages arising out of the School's violation of state and federal reasonable accommodation laws, infliction of emotional distress, wrongful termination of employment,   failure to protect me, the students and those working at Park School from a serious threat to the community, and breach of contract.   The factual circumstances supporting these claims are set forth below.

The following people were involved in this blatant unfair and discriminatory behavior  against me:
**Scott Young-Head of School**
**Tina Fox-Head of lower division**
**Kenneth Rogers-Head of upper division**
**Kimberly Boyd-Assistant head of school**
**Carole Carter-Head of technology**
**Joe Robbins-Board Chair**
**Leslie Miller-Vice Chair**

I include the board because I spoke with several of them about Scott's very bad behavior.  They are his boss and they allowed him to run amok.

I was hired by the Park School in 1989 as a music teacher. For 32 years, I taught students history and cultural awareness through music at the School. Besides teaching students in the classroom, I also prepared

the children's choir for musical performances outside of school. My students have performed at dozens of charity concerts and public venues.

Some of the concerts that I directed include performing for President and Mrs. Obama and their guests at the White House, performing for South African President Nelson Mandela during his historic visit to the US, and making arrangements for my students to meet and engage in conversation and with Ms. Rosa Parks. I was also responsible for preparing the children for performances throughout the school year including Grandparent's Day, the Yule Festival, and May Day and every graduation ceremony.

In 2020 due to the COVID-19 pandemic, the entire school began teaching remotely from home. Though the school reopened for in person teaching and learning in 2020-2021 school year, the music dept. taught remotely for an extra year (no singing was allowed in school for fear of spreading COVID). The music dept was invited back 2021-2022. I taught remotely that year because I was the recent recipient of a kidney transplant.  Close to  the end of the 2022 school year, my Doctors gave me clearance to return to in person teaching.

On March 4, 2022, I received the customary renewal contract letter for the 2022-2023 school year, beginning September 1, 2022. The offer letter was signed by the Head of School, Scott Young.  It contained an offer of a full-time position, I've received a similar renewal letter for 33 years of my employment at the School. I signed the Offer via docusign accepting the renewal for the following school year and returned it back on the same day that I received it (March 4, ).

In June/July 2022,  Scott invited myself and my husband to meet with him and the interim HR person Irina Fernandez to discuss my return to the School for in-person teaching beginning in September 2022. The meeting began with discussions about my vision impairment which had been my disability for many years but have never accommodated for,..and then my immunocompromised situation due to my recent kidney transplant.  Since 2018, Scott has been aware of my impaired vision because I informed him,  and so did the past head of

music dept. Sadie Mayes. Sadie and I asked for reasonable accommodations in adjusting the lighting in my workspaces. He ignored both of us and as a result, I broke my wrist on 11/18 and my patella on 2/19.

The following were the reasonable accommodations discussed during my meeting with Scott and Irina on 6/28  (interim HR for that moment.):

1. To remove fall hazards in and around my classroom in hallways.
2. Plan to support my infusion needs once monthly on Tuesday.
3. Kids will wear masks while in your classroom.
4. The school will place HEPA air filters in your classroom.
5. The school will remove all fall hazard items in and around your classroom (ex. Rugs and not having students sit on the floor outside of your classroom)
6. The school will hire a teaching assistant to support you while teaching.
7. The school will provide IT training in the classroom before the start of school
8. Pre K will be removed from her teaching load or if possible we will provide a transportation solution between buildings.

Scott also said that as the year progressed he would continue to support and accommodate my needs.

Well, the only accommodation that was met was #4 where I did have a HEPA filter contraption in my classroom.

 I was especially offended that he took away my pre-k class pretending to lighten my load when I specifically asked Scott not to.

I do have evidence in the forms of emails, text and photos and videos of my allegations against the school and specifically the board, and administration.

The most difficult and frightening piece of this accommodation process was that Scott, Tina, and Kenneth decided to hire an assistant who was unable to assist me because he was not well. His name is "Innocent Okechukwu".  He was physically and mentally ill and he shared this

with me. I went directly to Scott for help and he passed me on to Tina and Ken.  After about a week or so I noticed the Innocents's anxiety and erratic behavior worsening. He was having anxiety attacks during class time and nearly passed out during one of my first grade classes.

  I was scared to death for me and my students! I wrote emails that said "I am frightened" "I do not feel safe"! and spoke to others on the admin. team pleading to them to please help me. They all completely ignored me.  The week of 10/17 Scott went out of town leaving Tina and Ken in charge.  It was like the insane running the asylum.

I emailed Scott while he was out of town to express my fears and needs for him to find a solution.  His response was lackluster to say the least.

On 10/20, I excused Innocent from assisting me. I met with Scott when he returned from his soiree on Friday 10/21.  In that meeting he informed me that Innocent will remain on assignment as my assistant.  I just could not believe his complete failure to intervene in this dangerous situation. I think that I cried every day.  I was deeply traumatized by the callous way that this serious situation was being handled. My husband stayed at work with me when Innocent was assisting.

After I had signed my contract 3/4, Scott kept trying to convince me to sign an early retirement agreement to the point of Ad nauseam. He just didn't want to accept my polite decline but after about the fourth try he seemed to accept the fact that I really wanted to teach. I bring this up because by Sunday 10/23 I had made up my mind and decided that I would absolutely not teach another class with Innocent in my classroom. This was the responsible move for me to make in order to keep myself and my students safe. I emailed Scott and asked if the retirement package was still on the table. He replied yes and said that he would set up a meeting for the next day 10/24.

In that meeting, I informed Scott that Innocent was making it impossible for me to do my job properly to which he responded that he wasn't going to make changes to his position as my assistant, and that he would send me a copy of the retirement agreement to look over.  I then went and taught my classes for the day with "Dave" assisting me.  On 10/25 I called Park School to make sure that my "substitute teacher" had any

questions (I had requested and was approved a few days off). This is when I discovered Scott had kicked me completely out of the Park School email system. He segregated me from my colleagues and the entire Park Community.  This is when I discovered that Scott had ousted me, terminated me, and kicked me to the curb in retaliation because of my complaints about his lack of compliance with the ADA agreement that he signed. The school discriminated against me in every way possible by making what I thought was going to be a joyous and supported return, an attack  on my integrity, my character and my human rights.

Interesting ending to this chapter: Scott irresponsibly assigned Innocent to teach my classes and even wrote the parents and told them so…. By 11/7, Scott fired Innocent for speaking inappropriately to students.

Ken, this is a write up just to give you some idea of just how horrible an experience this has been for me. I have a long way to recover.  If you need anything please do not hesitate to contact me.
My lawyer Denzil McKenzie prepared everything below.

**STANDARD OF REVIEW**

I.     **The Park School's Violation of the ADA and M.G.L. c. 151B § 4 (16)**

The Americans with Disabilities Act (the "ADA") prohibits discrimination against a "qualified individual" because of the individual's disability, 42 U.S.C. § 12112(a). The ADA punishes employers for breaches of the Act  which includes any failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," Id. § 12112(b)(5)(A). Like the ADA, Massachusetts has enacted its own disability discrimination statute.  Massachusetts General Laws Chapter 151B, § 4 (16), states that an employer may not "dismiss from employment or refuse to hire, rehire, or advance in employment or otherwise discriminate against, because of handicap, any person alleging to be qualified a handicapped person." M.G.L. c. 151B § 4 (16). G.L.c. 151B, § 4.

In order to establish a claim for failure to make reasonable accommodations under the ADA, a plaintiff is required to show (1) that she suffers from a disability, as defined by the ADA,

(2) that she is an otherwise qualified individual, meaning that she is "nevertheless able to perform the essential functions of [her] job, either with or without reasonable accommodation," and (3) that the employer knew of her disability and did not take steps to reasonably accommodate it. Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002); see also, 42 U.S.C. § 12111(8) (defining "qualified individual"); Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999) (describing "qualified").

With regards to Mrs. Allen-Brooks handicapped condition, she can meet each of the statutory elements to sustain her disability claims. First, Mrs. Allen-Brooks offered ample proof of her blindness. Second, based on Mrs. Allen-Brooks' performance history during the preceding four- and one-half years when she had been blind and had performed the functions of her position as a music teacher. With respect to the third element, it is not disputed that the Park School was on notice of Mrs. Allen-Brooks' medical condition and need for accommodation.

Mrs. Allen-Brooks specifically requested reasonable accommodation under the ADA before the School terminated her position, the school had reason to know that such a request was imminent based on Mrs. Allen-Brooks' multiple requests and meetings to discuss her needs for reasonable accommodations. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) ("[a]n employee is not required to use any language when requesting an accommodation but need only 'inform the employer of the need for an adjustment due to a medical condition.'" (quoting Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1114 n.5 (9th Cir. 2000) (en banc), vacated on other grounds by 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002))); see also, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, 1999 WL 33305876, at *4 (Mar. 1, 1999) ("[w]hen an individual decides to request accommodation, the individual . . . must let the employer know that s/he needs an adjustment or change at work for a reason related to a medical condition. To request accommodation, an individual may use 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'"); see also, Dennis v. Kan. City, No. 96-0177-CV-W-9, 1997 U.S. Dist. LEXIS 24262 at *37 (W.D. Mo. Sept. 20, 1997) ("reasonable jury to conclude that [employee] gave proper notice to [employer to] qualify for FMLA leave despite not expressly requesting FMLA leave.").

Accordingly, the School was given Mrs. Allen-Brooks disabilities well before she resumed work in September 2022; and was duty-bound to make reasonable accommodations to make it possible for her to continue working. Thus, the School's decision to terminate Mrs. Allen-Brooks violates the ADA and M.G.L. c. 151B § 4 (16).

Under the ADA, the remedies available to a prevailing plaintiff include, injunctive relief, back pay, front pay, compensatory damages, punitive damages, liquidated damages, attorney's fees and costs. Here, the facts described above provide sufficient grounds to support a finding of intentional discrimination against Mrs. Allen-Brooks because of her declining health. Therefore, an award of punitive damages is warranted. See e.g., Criado v. IBM Corp., 145 F.3d 437, 445 (1st Cir. P.R. 1998) (affirming combined compensatory and punitive damage award of $300,000 against employer where there was sufficient evidence that employer failed to reasonably accommodate plaintiff's depression and anxiety disorder brought on by work related stressors).

## II.  Wrongful Termination in Violation of Public Policy, and Breach of Contract

Massachusetts courts have recognized several exceptions to the at-will employment doctrine that permits an employer to terminate an employee for any legal reason or for no reason at all.  One such exception is where the employer termination of the employee would violate public policy.  See Holden v. Worcester Housing Authority, No. 93-1508, 1995 Mass. Super. LEXIS 518 at * 3-5 (Mass. Super. Ct. July 24, 1995) ("…liability may befall an employer who terminates an at-will employee in violation of a 'clearly established public policy.'") quoting Hobson v. McLean Hospital Corp., 402 Mass. 413, 416 (1988).  The Supreme Judicial Court has further observed that, "redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claims), for doing what the law requires (e.g., serving on a jury), or for refusing to do what the law forbids (e.g., committing perjury)." Smith v. Pfeffer v. Superintendent of Walter E. Fernald State School, 404 Mass. 145, 149-150 (1989).  Here, Mrs. Allen-Brooks was terminated for exercising her right to request reasonable accommodations to make it possible for her to continue her employment.

Here, Mrs. Allen-Brooks' constructive termination is directly related to the exercise of her legally protected right to ask her employer to accommodate her disabilities. The school terminated her for making complaints about the lack of accommodations for her disabilities; (1) her complaint that her reasonable accommodations about handicap accessibility were not being made with respect to the parking spot and access to the auditorium; (2) her request for assistance with the children in her classroom was not being met; and (3) workplace safety concerns concerning Mr. Okechuku's behavior around her and the students.

## III.  The Park School's  OSHA Violations

The Occupational Safety and Health Act of 1970 (OSH Act), 29 U.S.C.S. § 651 et seq. requires employers to provide their employees with working conditions that are free of known dangers.  See Modern Cont'l Constr. Co. v. OSHRC, 305 F.3d 43, 49 (1st Cir. 2002). ("the [OSHA] Act places primary responsibility on employers -- that is, those who oversee and control the work environment -- to achieve compliance with its standards and ensure a safe workplace."). Notwithstanding the OSHA regulations, Park School also has a common law duty to warn its employees of known dangers at  the workplace. See e.g., Cotoia v. Seale, 306 Mass. 101, 103 (1940) ("[i]t is the duty of an employer who puts an employee to work in a place of danger that is known or should be known by him, to give to the employee such instructions and warnings as are reasonably required by the youth, inexperience or want of capacity of the employee.").  The Park School breached this duty when it failed to warn Mrs. Allen-Brooks and other employees of the erratic and dangerous behavior of Mr. Okechuku and only took measures to eradicate this threat after Mrs. Allen-Brooks was no longer with the school.  As a direct and proximate result of the Park School's breach, Mrs. Allen-Brooks  suffered fear and anxiety that she would be hurt by Mr. Okechuku.

## CONCLUSION

Mrs. Allen-Brooks dedicated her entire professional career to The Park School. After 33 years of unwavering dedication, she has been caused to feel that she was discarded because of her declining health. The depth and extent of The Park School's callous disregard of the ADA and other related disability protection legislation is disturbing. Mrs. Allen-Brooks wishes to bring closure to her experiences with The Park School.

Respectfully submitted,
Janice Allen-Brooks,
By her attorneys,

Dated April 14, 2023

s/s Denzil D. McKenzie
Denzil D. McKenzie, BBO 336420
McKenzie & Associates, PC
183 State Street, Suite 6
Boston, MA 02109
Tel. 617.778.0010
denzil@mckenzielawpc.com